

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

WILLIAM J. MARTINI
    JUDGE

<h2 style="text-align:center">LETTER OPINION</h2>

June 23, 2011

Randall H. Cook
Office of the U.S. Attorney
District of New Jersey
970 Broad Street
Newark, NJ 07102
    (*Attorney for Plaintiff*)

Luis O. Diaz
710 West 190th St., Suite D
New York, NY 10040

Pasquale F. Giannetta
36 Mountain View Boulevard
Wayne, NJ 07470
    (*Attorneys for Defendant*)

    **RE:   United States v. Jose Almonte, Crim. No. 11-158 (WJM)**

Dear Counsel:

    This matter comes before the Court on Defendant's motion to suppress the evidence against him pursuant to Federal Rule of Criminal Procedure 12(c). For the reasons that follow, Defendant's motion to suppress is **DENIED.**

**I.    BACKGROUND**

    The facts surrounding the October 16, 2009 search at issue are described in Defendant Jose Almonte's motion to suppress evidence (Docket Entry No. 60) and in the

Government's opposition (Docket Entry No. 61), and are summarized here. Starting around September 2009, the DEA began surveillance on co-Defendant Ramon Delorbe and on Almonte's apartment at 108 35th Street, Union City, New Jersey ("Union City Apartment"). Delorbe had identified the apartment as a "stash house" for storing cocaine and processing heroin to an individual named Jose Garcia, and Delorbe's car was observed in the vicinity of the Union City Apartment multiple times by DEA agents. On October 16, 2009, agents stopped Delorbe in Weehawken, New Jersey on a traffic stop. When questioned about heroin trafficking, Delorbe admitted that there were narcotics at the Union City Apartment, and he then provided law enforcement with keys and gave written and oral consent for them to search it. Almonte, who doesn't speak English, was in the Union City Apartment at the time, and refused to open the interior door (which was bolted from the inside) to the agents, and also drew the curtains. The agents broke a window to gain visibility into the apartment, at which point Almonte unlocked the interior door. After the agents had entered, another individual, Joselin Reynoso Inoa, stated that he resided in the Union City Apartment and provided further written and oral consent to a search. The agents then discovered and seized the physical evidence that Almonte now seeks to suppress, and Almonte, Inoa and Delorbe were arrested.[1] In post-arrest statements, Inoa stated that the had resided in the Union City Apartment for two months, and that Delorbe had keys and was there almost continuously in the days leading up to October 16, 2009. Delorbe further corroborated Inoa's statement, stating that (1) rent and utilities for the Union City Apartment were paid out of proceeds from the heroin business operating out of the apartment, (2) he was in the Union City Apartment almost continuously for the days leading up to the October 16 arrest, and (3) that he and Almonte allowed Inoa live there.

The indictment, filed March 14, 2011, alleges that from around August 2009 to October 2009, Almonte conspired with Delorbe and others to manufacture and distribute heroin. Specifically, Almonte is charged with two counts: (1) conspiring to manufacture and distribute 100 grams or more of heroin; and (2) possessing with intent to distribute 100 grams or more of heroin. On April 29, 2011, Almonte filed the instant motion to suppress the evidence found at the Union City Apartment on October 16, 2009, claiming that the agents did not properly obtain consent before entering the premises without a search warrant. The Government opposes the motion, and also moves to (1) admit summaries of voluminous data pursuant to Rule 1006, and (2) require reciprocal discovery from Almonte. However, at this time the Court will reserve on the Government's additional motions, and will only address Defendant's motion to suppress evidence.

---

[1] Co-Defendants Joselin Reynoso Inoa and Ramon Delorbe have each pled guilty to charges arising from their involvement in this case.

## II.   DISCUSSION

Almonte has filed a motion to suppress, pursuant to Rule 12(c), all evidence found at the Union City Apartment. Almonte argues that the search of his apartment at 108 35th Street, Union City, New Jersey, was a warrantless search without probable cause in violation of the Fourth Amendment. The Government argues that the search did not violate the Fourth Amendment, as the agents reasonably relied on Delorbe's consent to initiate a search, then reasonably continued the search after Almonte's refusal to open the door due to exigent circumstances, and reasonably relied on Inoa's consent to complete the search after entering the apartment.

### A.   Whether Consent was "Voluntarily and Freely Given"

The Fourth Amendment of the Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and provides that "no Warrants shall issue, but upon probable cause..." U.S. Const. Amend. IV. As such, the Fourth Amendment only prohibits searches and seizures that are unreasonable. *Illinois v. Rodriguez*, 497 U.S. 177, 183 (1990). The Supreme Court has "long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991). To justify a search as reasonable based on consent, the Government "has the burden of proving that the consent was, in fact, freely and voluntarily given." *Bumper v. North Carolina*, 391 U.S. 543, 548 (1960). Almonte argues that Delorbe's consent was not freely and voluntarily given because he did not have authority to give such consent. However, voluntariness of the consent does not relate to whether not the person giving consent had authority, but simply whether the consent was "freely and voluntarily given." The parties who gave consent to search the Union City Apartment, Delorbe and Iona, are not challenging the voluntariness of such consent. Additionally, the agents obtained written consent from both Delorbe and Inoa, and the written consent form advised the co-Defendants of their Constitutional rights. Therefore, the voluntariness of the consent is not at issue.

### B.   Authority to Give Consent

Essentially, Almonte is claiming that Delorbe did not have the authority to give the agents consent to search the Union City Apartment, as he was only a temporary guest of the apartment and was not physically in the apartment when the consent was given, and that as such the consent is invalid as to Almonte. For the consent to be valid as to Almonte, Delorbe (and Inoa) must have had some authority to give the agents consent to search the Union City Apartment.

3

Third-party consent is allowable whenever the third-party has either actual authority or apparent authority over the premises. Apparent authority exists wherever the officer reasonably believes the third-party possesses common authority over the premises. *Rodriguez*, 497 U.S. at 185-186. In order for there to be common authority over the premises, the third-party must have "mutual use of the property" and "joint access or control for most purposes." *Id.* at 181. Therefore, so long as the agent reasonably believed that Delorbe and Iona shared mutual use of the property with Almonte, the search based on their consent was reasonable under the Fourth Amendment.

Here, the undisputed facts provide ample evidence that the agents reasonably believed that Delorbe had common authority over the Union City Apartment. Once stopped and questioned by police, Delorbe gave verbal and written consent to search the Union City Apartment and handed over keys to the front door. The fact that Delorbe had keys, and that earlier surveillance by DEA agents showed Delorbe had been in the Union City Apartment for extended periods of time over the month leading up to his arrest, supported the agents' understanding that Delorbe was at least a temporary guest with common authority over the premises. Defendant Almonte argues that Delorbe did not have authority to give consent to the search of Almonte's Union City Apartment, since Delorbe "was only a temporary guest" and "was not physically in the apartment when the alleged consent was given." (Almonte's Moving Br. at 5.) However, neither of these facts alone negate Delorbe's ability to authorize entry to the Union City Apartment. *See Rodriguez*, 497 U.S. at 179-180 (police met woman at one location, who then consented to a search at a different apartment on a different street to which she had a key); *United States v. Clark*, 96 Fed. Appx. 816, 820 (3d Cir. 2004) (third-party found to have apparent authority to consent to a search of a hotel room where she had a key and seemed to be a "guest in the hotel room" with two others). The issue is neither where Delorbe was when he gave consent, nor whether he was a temporary or permanent guest or resident at the Union City Apartment, but instead just whether he had common authority over the premises. The Court finds Delorbe had common authority over the Union City Apartment and was able to provide valid consent to search the premises.

Finally, "a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." *Georgia v. Randolph*, 547 U.S. 103, 120 (2006). This was not the case at the time Delorbe gave consent, and therefore the initial entry into the Union City Apartment was reasonable based on Delorbe's consent. Once Almonte refused to open the door, however, it could be argued under Randolph that the agents needed additional justifications for continuing the search at that point. Up until Almonte's refusal, however, Delorbe's consent was certainly valid.

### C. Exigent Circumstances and Iona's Consent

Almonte has only challenged the initial reasonableness of the agents' search; i.e., the validity of Delorbe's consent and the agents' initial attempt to enter. Since the agents found the door locked from the inside, the Government also posits that should additional justification be necessary, (1) when Almonte drew the curtains, the agents reasonably believed that exigent circumstances (the likely destruction of evidence) justified their warrantless entry; and (2) Iona's further consent justified continuing the search of the premises after the exigency was addressed.

Defendant Almonte has not addressed these aspects of the search, but the Court will address them briefly. First, law enforcement officers may enter a premises without a warrant to prevent the loss, removal, or destruction of evidence. *See United States v. Williams*, 521 F.3d 902 (8th Cir. 2008). Here, the agents had reason to believe the Jersey City Apartment was being used as a headquarters for a heroin manufacture and distribution business. Therefore, when Almonte deliberately obscured their view by drawing the curtains, the agents reasonably believed he may have been trying to destroy the evidence. While it could be argued that Almonte's refusal to open the door revoked Delorbe's prior consent under *Randolph*, his actions then created exigent circumstances that warranted the agents' entry into the apartment. Once inside, Inoa's written and oral consent to a continued search allowed the agents to proceed after the exigent circumstances (i.e., the potential destruction of evidence) were addressed. Inoa had authority to consent just as Delorbe did, since he said he resided there and appeared to the agents to exercise joint control of the premises. At this point Almonte, who was still physically present, did not object to Inoa's consent. Under these circumstances the agents reasonably believed that they were authorized to complete their search of the premises.

### III. CONCLUSION

For the foregoing reasons, the Court finds that no evidentiary hearing is necessary, and Defendant's motion to suppress the evidence against him is **DENIED**. An order accompanying this Letter Opinion has already been issued.

                                                       s/ William J. Martini
                                                       **WILLIAM J. MARTINI, U.S.D.J.**